**HARIM ALMANDO PRINCE, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2010-0076

Supreme Court of the Virgin Islands

September 13, 2012

400

KELE C. ONYEJEKWE, ESQ., Office of the Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

TIFFANY V. MONROSE, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 17, 2007)

SWAN, *Associate Justice.* The Appellant, Harim A. Prince, was involved in an altercation which led to him violently stabbing his half-brother. He was charged and convicted on four-counts in an Information, which included two counts of third degree assault in connection with an act of domestic violence, and two counts of using a dangerous weapon during the commission of a crime of violence. Appellant appeals his convictions, asserting that the trial court erred in its final instructions on what constitutes a dangerous weapon. He further asserts that the jury instructions on self-defense were insufficient. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On or about May 18, 2010, Harim Prince visited his girlfriend, Janisha Ingram, at her two-story residence in Estate Bovoni, where she resided with her children and extended family. Prince and Ingram have one child

together. Upon arriving at Ingram's home, Prince found his half-brother, Tyshown Belle, conversing with Ingram. Prince regarded his brother as an instigator who had promoted conflicts between Ingram and Valencia Francis, the mother of both Prince and Belle. Prince believed the conflicts occurred because Belle would encourage Ingram to talk about his mother in conversations between them and would then report to his mother what Ingram said.

Prince took Ingram aside and demanded an explanation as to why Belle was at her house, simultaneously reminding her that in an effort to maintain peace within the family Belle was not to visit Ingram's home. Ingram informed Prince that Belle had made sexual advances towards her. Infuriated by Belle's alleged misconduct, Prince confronted Belle, demanding to be told why he was at Ingram's home and demanding that he immediately leave the home. An altercation ensued between Belle and Prince with Belle seizing a broomstick,[1] while Prince obtained a knife from the kitchen. During the altercation, Belle struck Prince with the stick. Upon hearing the commotion on the second floor of the house, Ingram's uncles, Glen and Mario Foy, both of whom reside in the first floor level of the residence, hurried upstairs to diffuse the altercation between Belle and Prince.

During this altercation, Prince was observed wielding a black knife that had a straight handle with a slight bend at the end. Glen Foy, who described the knife as being about six inches in total length, with a blade approximately four inches in length, attempted to take the knife from Prince but was unsuccessful. The Foys managed to temporarily mollify the situation, and Prince and Belle departed from Ingram's home. Immediately following their departure, Prince and Belle resumed their altercation outside Ingram's home during which Prince stabbed Belle in his left side with the knife, inflicting a puncture in Belle's lung. No one directly observed Prince stabbing Belle. However, Mario Foy observed Prince charging towards Belle after they left Ingram's home. After the second altercation between Prince and Belle, both Mario Foy and Ingram observed Prince holding a black knife.

Following the stabbing incident, Belle initially told police investigators that he accidentally ran into the knife held by Prince. Detective Angela

---

[1] Some witnesses testified that Belle picked up a broomstick, while others claim it was a mop stick. Whether it was a mop stick or a broomstick is unclear.

Trant, who was assigned to investigate the case, testified that Prince told her he had stabbed Belle on the left side of his back. Additionally, Police Officer Roy Chesterfield testified that while transporting Belle to the hospital, Belle informed him that he was stabbed by Prince.

Prince was charged with the stabbing in a four-count Information. The Information charged two counts for third degree assault, domestic violence, in violation of V.I. CODE ANN. tit. 14 § 297(2) and (4) and V.I. CODE ANN. tit. 16 § 91(b)(1), (2), and two counts charging use of a dangerous weapon during the commission of a crime of violence in violation of V.I. CODE ANN. tit. 14 § 2251(a)(2).

During trial, Prince's counsel moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing that "the Government has failed to prove beyond a reasonable doubt that Mr. Belle was not stabbed due to self-defense" even after looking at the evidence in a light most favorable to the Government. The trial court denied the defense's motion.

In delivering the final jury instructions, the trial court provided the jury with a definition of what constitutes a deadly weapon and what constitutes carrying a dangerous weapon during the commission of a crime of violence. The trial court also included in the final jury instructions a specific instruction on elements of self-defense. The jury returned verdicts finding Prince guilty on all four counts in the Information.

A sentencing hearing was held on September 23, 2010. The trial court merged Counts 3 and 4 with Counts 1 and 2 for the purpose of sentencing and imposed no separate sentences for Counts 3 and 4. On Count 1, Prince received a sentence of imprisonment for one year. On Count 2, Prince received the mandatory minimum sentence of seven and a half years of imprisonment.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The Superior court entered a final Judgment and Commitment in this case on September 30, 2010. Accordingly, we have jurisdiction over this appeal.

## III. STANDARD OF REVIEW

■ On appeal, Prince advances claims for which he has a particularly high burden. A jury instruction will generally not be invalidated unless it is shown that the instruction substantially and adversely impacted the constitutional rights of the defendant and impacted the outcome of the trial. *See Gilbert v. People*, 52 V.I. 350, 361-62 (V.I. 2009) (citing *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). When a timely objection to a final jury instruction was made, we review the objection for abuse of discretion. *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 765, 44 V.I. 336 (3d Cir. 2001). However, when no objection has been made we review a jury instruction for plain error. *Id. See also Elizee v. People*, 54 V.I. 466, 475 (V.I. 2010).

■ When the issue concerns whether the jury instruction failed to state the proper legal standard, the review is plenary. *Gilbert*, 52 V.I. at 354. When reviewing unpreserved charging errors, we have observed that a claim of improper instruction will rarely justify reversal of a criminal conviction when no objection has been made in the trial court. *Elizee*, 54 V.I. at 476 (quoting *United States v. Palmeri*, 630 F.2d 192, 201 (3d Cir. 1980)). A jury instruction that omits a required element of the offense or defense will be disregarded if "it does not impact substantial rights and is harmless beyond a reasonable doubt," even if the instruction was objected to at trial. *Gilbert*, 52 V.I. at 361.

Our review of statutory construction is plenary. *Miller v. People*, 54 V.I. 398, 401 (V.I. 2010) and *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010). Similarly, we exercise plenary review over issues regarding sufficiency of the evidence. *See Marcelle v. People*, 55 V.I. 536, 540 (V.I. 2011) and *United States v. Wright*, 665 F.3d 560, 572 (3d Cir. 2012). We must consider the sufficiency of the evidence and whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, viewing the evidence in a light most favorable to the government. *Gilbert*, 52 V.I. at 354; *Wright*, 665 F.3d at 572; and *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008).

## IV. ISSUES

Prince raises several issues concerning the validity of the jury instructions and the validity of the jury verdicts. The issues are:

A. Whether the trial court's final jury instruction on "deadly weapon" under V.I. CODE ANN. tit. 14 § 297 was erroneous and caused jury confusion because:

    1.    the court's final instruction allegedly prompted the jury to equate "dangerous knife" with "non-dangerous knife," and there was no list of enumerated objects which constitute a deadly weapon causing the instruction to be incomplete; and

    2.    there was frequent interchange of the words "dangerous" and "deadly" in the jury instructions,

B. Whether the trial court erred in failing to instruct the jury on the defenses of justifiable use of force under title 14, section 44; resistance by party to be injured under title 14, section 41; and what constitutes lawful violence under title 14, section 293.

## V. DISCUSSION

### A. The jury instruction concerning a "deadly weapon" under V.I. Code Ann. tit. 14 § 297 was proper.

Prince asserts a number of deficiencies in the trial court's final jury instructions regarding the meaning of the term "deadly weapon" in the crime of "assaulting another with a deadly weapon" under V.I. CODE ANN. tit. 14 § 297(2). For instance, Prince asserts that the final jury instruction transposed the elements of "dangerous weapon" in the crime of "carrying or using dangerous weapons" under V.I. CODE ANN. tit. 14 § 2251 to the elements of a "deadly weapon" under section 297(2). However, the trial record confirms that this assertion is erroneous. V.I. CODE ANN. tit. 14 § 2251 makes it a crime if a person:

> with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon[.]

Prince claims that the trial court utilized this language in instructing the jury on deadly weapon under § 297(2). However, the actual instruction on deadly weapons given by the trial court was as follows:

A deadly weapon is an object that is deadly by its nature or that is used, or may be used, in such a manner that it is calculated to, or likely to, produce death or serious bodily harm. Whether an object is a deadly weapon depends on the essential character of the object and the manner in which it is used.

Under Virgin Islands law, a deadly weapon includes, but is not limited to, any dangerous or deadly weapon if possessed, born[e], transported, or carried by, or had under the proximate control of, one who does so with intent to use the item unlawfully against another.

(J.A. at 174-175.) Undoubtedly, the trial court's final jury instruction on deadly weapon under section 297(2) did not track the language pertaining to a dangerous weapon under Section 2251. Prince claims that "the instruction given to the jury without a list of things that constitute 'dangerous or deadly weapon' is at best, not complete," and that with the instruction as given, "there [was] no way for the jury to ascertain whether a deadly or dangerous weapon was involved in this case." (Appellant Reply Br. at 4). Therefore, based on these instructions, Prince claims that there was no opportunity for the jury to ascertain whether the object in question was a "dangerous" or "non-dangerous" knife. We will examine whether the jury instruction on "deadly weapon" was appropriate.

### 1. The jury instruction could not reasonably have compelled the jury to equate "non-dangerous knife" with "dangerous knife" even in the absence of a comprehensive list of weapons.

Virgin Island's statutory law does not define "deadly weapon." The common law provides that whether an object is a deadly weapon for the purpose of an aggravated assault charge depends on a number of factors. *See* 6 AM. JUR. 2D *Assault and Battery* § 38. These factors include whether the object is "designed as a weapon and capable of producing death or great bodily harm"; whether the object is a "device or instrumentality, which, in the manner it is used or intended to be used, is likely to produce death or great bodily harm"; or whether the "defendant had the apparent ability to injure the victim seriously by using the object." *Id.*

In interpreting the meaning of the term "deadly weapon" under 14 V.I.C. § 297(2), the District Court's Appellate Division, in accordance

with United States Third Circuit Court of Appeals precedent, has held that the same definition given by the trial court in this case is the accepted common law standard. *See Phipps v. Gov't of the V.I.*, 241 F.Supp.2d 507, 510 (D.V.I. App. Div. 2003) (citing *Gov't of the V.I. v. Robinson*, 29 F.3d 878, 886, 30 V.I. 428 (3d Cir. 1994)). In using the standard enunciated by the Third Circuit, the District Court in *Phipps* determined that the circumstances surrounding the use of an item necessarily play a pivotal role in the determination of whether that item is a deadly weapon. *Id.* For example, because of the circumstances of their use iron bars, baseball bats, bricks, rocks, ice picks, automobiles, and pistols used as bludgeons have all been held by various courts to constitute dangerous weapons. *Id.* (citing *Robinson*, 29 F.3d at 886).

■ In *Phipps*, the defendant was convicted of possession of a dangerous or deadly weapon under 14 V.I.C. § 2251(a)(2) and assault with a deadly weapon under 14 V.I.C. § 297(2). One of the issues on appeal was whether a crowbar constituted a dangerous or deadly weapon under those two provisions. The appeals court ruled that the trial judge correctly found that a crowbar may constitute a deadly weapon under 14 V.I.C. §§ 297(2) and 2251(a)(2). In arriving at this holding, the District Court's Appellate Division, citing Third Circuit precedent, found that when the defendant struck the victim with the crowbar, "it became a weapon likely to cause death or serious injury." *Id.* at 510. Importantly, when an object can be used in a manner calculated to inflict death or serious bodily injury, that object can be classified as a deadly weapon. *See Robinson*, 29 F.3d at 886. Therefore, if an individual can use a knife to kill or to inflict serious injury upon another person, the knife is a deadly weapon when used in such a manner. ·

■■ Under the common law definition of "deadly weapon" as applied by the Third Circuit to 14 V.I.C. § 297(2), a specific list of all objects that may constitute deadly weapons is not necessary as Prince suggests. (*See* Appellant's Reply Br. at 4.) Similarly, objects not originally created or produced to be used in a manner to inflict injury upon another person can and, based upon how they were used, have been found to be "dangerous weapons" under the common law. *See Phipps*, 241 F. Supp. 2d at 510 and *Robinson*, 29 F.3d at 885-86. Here, the trial record confirms that Prince wielded a knife in a manner calculated to inflict serious bodily injury upon his brother. Unquestionably, Prince inflicted a severe injury upon his brother as confirmed by the deep stab wound inflicted upon Belle, which

induced a collapsed lung, all of which prompted Belle's admission to the hospital for exigent medical treatment. Commonsensically, a reasonable trier of fact had an ample basis on the record to conclude that the vicious assault with a knife which inflicted severe bodily injuries upon the victim, necessitating exigent medical treatment including surgery at a hospital would, only have occurred with a deadly or dangerous knife, as opposed to a "non-dangerous" knife. Therefore, Prince has failed to meet his burden of establishing plain error in the final jury instructions.

## 2. The interchangeable use of "deadly" and "dangerous" in the jury instructions did not render them defective.

█ Prince's next objection to the jury instruction was the trial judge's interchangeable use of the terms "deadly" and "dangerous" while addressing the jury. Since this issue was not raised at trial, Prince must demonstrate that the interchange of these terms constituted plain error, in order for this discrepancy to void the validity of the jury instruction or require reversal of the convictions. Prince again fails in his burden. In viewing disparity amongst terminology, and whether the disparity impacts substantial rights, this Court generally takes a common sense approach and defers to the plain meaning of a term. *See Gilbert*, 52 V.I. at 357.

█ A "deadly weapon" is generally described as "[a]ny firearm or other device, instrument, material, or substance that, from the manner in which it is used or is intended to be used, is calculated or likely to produce death. In some states the definition encompasses the likelihood of causing either death or serious physical injury." BLACK'S LAW DICTIONARY 1731 (9th ed. 2009). Likewise, the term "dangerous weapon" is defined as being "[a]n object or device, that because of the way it is used, is capable of causing serious bodily injury." *Id*. Both definitions are similar, except that the term "deadly weapon" includes a likelihood of causing death.

█ We cannot view the use of the word "dangerous" instead of "deadly" in disconnection from the overall charge and the final jury instructions as a whole. *See Fleming v. People*, 775 F. Supp. 2d 765, 768, 55 V.I. 1016 (D.V.I. App. Div. 2011) (holding that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge) (citing *Johnson v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000)). We must look at whether the court's instructions as a whole are "misleading or inadequate to guide the jury's deliberation." *Id*.

■ The final jury instruction on the meaning of deadly weapon encompassed the likelihood of causing death. The trial court instructed that a deadly weapon is an object that may be used in a manner "calculated to, or likely to, produce death or serious bodily harm." (J.A. at 174-175) (emphasis added). Thus, the jury was instructed that the object used must have been capable of producing *death* or serious bodily harm despite the fact that the word "dangerous" may not have had that implication.

■ Further, the substitution of the word "dangerous" for "deadly" creates a discrepancy too inconsequential to invalidate the final jury instructions, especially when the instructions are considered in their totality. "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004). The final jury instructions given were in accordance with the common law definition of "deadly weapon" applicable in this jurisdiction, and the inadvertent use of the word "dangerous weapon" cannot reasonably render the jury instruction prejudicial.

Moreover, a plausible claim cannot be made that the use of the word "dangerous" prevented Prince from being adequately prepared for trial as he contends. The Third Circuit disagreed with a similar contention where a defendant was convicted by a jury verdict of possession of a dangerous weapon during the commission of a crime of violence when he was charged with the unlawful possession of a firearm during the commission of a crime of violence in violation of 14 V.I.C. § 2253(a). The defendant claimed that the verdict resulted in his being convicted of a crime for which he was never charged. *Gov't of the V.I. v. Bedford*, 671 F.2d 758 (3d Cir. 1982). In disagreeing with this contention, the Third Circuit opined that notwithstanding the fact that possession of a dangerous weapon is a separate and distinct statutory offense from possession of a firearm, the defendant was fully aware of the nature of the charges against him, and everything the jury heard was consistent with the charge of possession of a firearm. *Id.* at 763.

The trial court instructed the jury that to find Prince guilty of possession as charged in Count 1 of the Information, they must find that "On or about May 18, 2010, on St. Thomas, Virgin Islands, [Prince] used or attempted to use unlawful violence against a person, Tyshown Belle, his brother, with a deadly weapon, a knife, with intent to injure Tyshown

410

Belle." (J.A. at 174.) This instruction, in conjunction with the common law definition used to define "deadly weapon," added no new charge for which Prince did not receive notice. Additionally, the jury heard testimony of the injuries sustained by Belle and that the object or knife Prince used to stab Belle was the likely cause of Belle's injuries including a collapsed lung.

Further, interchangeable use of the terms "deadly" and "dangerous" is common when interpreting the use of a weapon in an assault charge. For instance, the terms were used interchangeably by both the *Phipps* and *Robinson* courts. The term is also used interchangeably in the factors determining whether a weapon is dangerous as summarized in American Jurisprudence. *See* 6 AM. JUR. 2D *Assault & Battery* § 38. This common interchangeable use of the two terms further illustrates that the terms are sufficiently synonymous and that using one word instead of another would not create any misunderstanding for a reasonable jury. Accordingly, any error caused by the interchangeable use of "deadly" and "dangerous" would have been harmless.

### B. The jury's instruction on self-defense was sufficient.

Prince next contends that although the jury was given an instruction on self-defense under V.I. CODE ANN. tit. 14 § 43,[2] the trial court erred in failing to instruct the jury on the defenses of justifiable use of force under V.I. CODE ANN. tit. 14 § 44; resistance by party to be injured under V.I. CODE ANN. tit. 14 § 41; and lawful violence under V.I. CODE ANN. tit. 14 § 293.[3] It is a recognized principle that a defendant is

---

[2] V.I. CODE ANN. tit. 14 § 43 states that:

> The right of self-defense does not extend to the infliction of more harm than is necessary for the purpose of defense. To justify a homicide on the ground of self-defense, there must be not only the belief but also reasonable ground for believing that at the time of killing the deceased, the party killing was in imminent or immediate danger of his life or great bodily harm.

[3] Prince also argues that the People failed to prove beyond a reasonable doubt that he did not act in self-defense. Mario Foy testified, however, that after he and Glen Foy managed to temporarily mollify the initial altercation and Prince and Belle departed Ingram's home, Prince charged after Belle and attacked him with a knife outside. Mario's testimony that Prince pursued Belle with a knife, if believed, tends to establish that Prince was the aggressor in the altercation that led to Belle's stabbing and thus did not act in self-defense. Accordingly, there was sufficient evidence to allow a rational jury to conclude that Prince did not stab Belle in self-defense.

entitled to an instruction on any cognizable defense "for which there exists evidence sufficient for a reasonable jury to find in his favor." *Gov't of the V.I. v. Isaac*, 50 F.3d 1175, 1180 (3d Cir. 1995) (citing *Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988) and *Gov't of the V.I. v. Salem*, 456 F.2d 674, 675, 8 V.I. 475 (3d Cir. 1972)). Even though some of the defenses to violent crimes in the Virgin Islands Code may be similar, they are not duplicative, and an instruction on one defense does not necessarily encompass the instruction on another, at least when viewing these statutes on a whole. *Id.* (holding that excusable homicide, justifiable homicide, and lawful resistance were not duplicative of the statutory definition of self-defense, and that the defendant was entitled to an instruction on the latter two defenses where there was evidence that defendant had a reasonable belief that he resisted the victim's attempt to commit assault on the defendant). Hence, an instruction on self-defense under V.I. CODE ANN. tit. 14 § 43 does not necessarily eliminate the necessity for instruction on other defenses, as the Government claims.

▮▮▮▮ Nonetheless, although an instruction on one defense does not preclude the need for instruction on another, Prince was entitled to instructions on these additional defenses only if the trial record contained evidence sufficient for a reasonable jury to find these defenses, and if the defenses were not substantially covered by other defense instructions. *See Fonseca*, 274 F.3d at 766 (citing *Robinson*, 29 F.3d at 882; and *Salem*, 456 F.2d at 675). Therefore, we must determine whether the requested instructions on the separate defenses were warranted based on the evidence established by the trial record. We must review the sufficiency of the evidence under plenary review with much deference to the trial court. *See Marcelle*, 55 V.I. at 540-41.

Section 41 authorizes the use of force to resist attempted harm against one's person, property, family, or some member thereof.[4] Similarly, section 44 declares that the use of force is justified in resisting the attempt by another to kill or injure, or the forcible entry into the residence by another where there is a reasonable belief of imminent threat to person or

---

[4] V.I. CODE ANN. tit. 14 § 41 states that:

> Any person about to be injured may make resistance sufficient to prevent
> (1) an illegal attempt by force to take or injure property in his lawful possession; or
> (2) an offense against his person or his family or some member thereof.

family.[5] Section 293 authorizes the use of necessary violence to restore order or to overcome resistance in limited situations.[6]

The evidence failed to confirm that instructions on any of these defenses were warranted. The weight of the evidence elicited at trial confirms that Prince was the initial instigator and aggressor in both altercations. There is no evidence in the trial record which indicates that Belle was a danger to anyone until Prince pugnaciously confronted Belle. Prince initially confronted Belle in a bellicose and truculent manner because of Belle's presence in Ingram's home. The allegation that Belle had solicited sexual favors from Ingram fueled Prince's anger against Belle. In the altercation that ensued, Belle grabbed a broomstick to defend himself, while Prince obtained a knife. There is no evidence to suggest that Belle forcibly entered Ingram's home or that he was an immediate threat to either property or persons present in Ingram's home, warranting

---

[5] V.I. CODE ANN. tit. 14 § 44 states in pertinent part that:

(a) Any person is justified in the use of force when:

(1) the person is resisting an attempt by another to kill him or to inflict serious bodily injury upon him; or

(2) the person is resisting an unlawful or forcible entry by another into his residence and he reasonably believes that there is an imminent threat of harm to him or his family.

[6] V.I. CODE ANN. tit. 14 § 293 states that:

(a) Violence used to the person does not amount to an assault or an assault and battery

(1) in the exercise of the right of moderate restraint or correction given by the law to the parents over the child, the guardian over the ward, the master over his apprentice or minor servant, whenever the former be authorized by the parent or guardian of the latter so to do;

(2) for the preservation of order in a meeting for religious or other lawful purposes, in case of obstinate resistance to the person charged with the preservation of order;

(3) the preservation of peace, or to prevent the commission of offenses;

(4) in preventing or interrupting an intrusion upon the lawful possession of property, against the will of the owner or person in charge thereof;

(5) in making a lawful arrest and detaining the party arrested, in obedience to the lawful orders of a magistrate or court, and in overcoming resistance to such lawful order; or

(6) in self defense or in defense of another against unlawful violence offered to his person or property.

(b) In all cases mentioned in subsection (a) of this section, where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose.

a use of force instruction under Section 41. While the evidence does suggest that Belle may have sought sexual favors from Ingram, Prince's girlfriend at the time and the mother of his child, there is no evidence to suggest that Belle made an attempt to obtain these favors by force and that Ingram was in any immediate danger of injury, which would justify the use of force under Section 44.

The evidence failed to provide any support for the claim that Prince used force to deflect any attempt by Belle to cause his death or to inflict upon him any serious injury, at the time that Prince stabbed Belle with the knife. Belle possessed a broomstick during his initial confrontation with Prince. However, there is no testimony that Belle had the broomstick in his possession during the second altercation, which occurred outside of Ingram's house and in which Prince relentlessly pursued Belle and stabbed him. Significantly, the record is devoid of any evidence that Belle was armed with any object at the time he was stabbed. Additionally, Belle and Prince did not have any of the relationships under section 293 for which one is authorized to use force against another to restore order such as a guardian over a ward, or an individual making a lawful arrest.

■■■ Concededly, sections 41, 44, and 293 contain subsections that address the use of force to resist harm to oneself. However, the instruction given on self-defense under section 43 was sufficient to encompass the subsections of sections 41(2), 44(a)(1), and 293(a)(6) regarding self-defense. The jury was provided with the legal principles on self-defense and Prince's right to use reasonable force to defend himself. (J.A. at 52). The instruction adequately incorporated the portions of sections 41, 44, and 293 that refer to the use of force to defend oneself. Thus the final jury instructions addressed the only theory of defense supported by the evidence and obviated the need to further instruct on other statutes that do include self-defense, but for which a basis for the majority of the elements of the defenses were absent at trial. *See Fonseca*, 274 F.3d at 768 (where defendant contended that an instruction should have been given on lawful violence as a defense to murder under V.I. CODE ANN. tit. 14 § 293(a), the Third Circuit held that where the jury was informed that the defendants had the right to use reasonable force to resist force being used against them, and of circumstances in which the defendants could use deadly force, even if they were the initial aggressors, the instruction on self-defense substantially and adequately included lawful violence, if it

applied in the context of deadly force and further instruction was not necessary).

█ Where an instruction as given correctly states the law and provides proper guidelines to a jury on a defense for which a basis was revealed from the facts presented at trial, a defendant is not entitled to instruction on other defenses under the Virgin Islands Code that includes defenses that were not advanced at trial, when the initial instructions on the defense were substantially complete in addressing the factual circumstances actually presented at trial. For instance, V.I. CODE ANN. tit. 14 § 293 lists six instances for which the use of violence may be lawful, such as by a parent or guardian over a minor child, or to prevent an intrusion upon the lawful possession of property. Section 293(a)(6) allows for the use of violence in self-defense. Subsection (a)(6) would be the only defense under Section 293 applicable to Prince's case based on the evidence adduced at trial. The refusal of the trial court to give an instruction on section 293, when subsection 293(a)(6) was substantially covered by an instruction under section 43, is not error. A trial court would err in refusing to give subsequent defense instructions only if "the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." *Fonseca*, 274 F.3d at 769. Here, this circumstance is not present.

## VI. CONCLUSION

For the reasons elucidated above, the jury verdict and trial court's judgment and sentence are affirmed.