**THEODORA JACKSON-FLAVIUS, Appellant/Defendant,**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff.**

S. Ct. Criminal No. 2010-0059

Supreme Court of the Virgin Islands

December 17, 2012

717

KELE C. ONYEJEKWE, ESQ., Office of the Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., Office of the Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 17, 2011)

SWAM, *ASSOCIATE JUSTICE*

Appellant, Theodora Jackson-Flavius, appeals her conviction on one count of third-degree assault, an act of domestic violence, in violation of 14 V.I.C. § 297(2) and 16 V.I.C. § 91(b)(1), (2). Jackson-Flavius argues that her conviction should be vacated because: (1) the trial court imparted erroneous final instructions to the jury on elements of a crime for which she was not charged, (2) the People of the Virgin Islands failed to satisfy its burden of proving the absence of self-defense beyond a reasonable doubt, (3) the trial court erred when it allowed the testimony of a lay person on an issue for which expert testimony was required, and (4) the trial court erred when it imposed an illegal split-sentence. We affirm the judgment and sentence of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

The facts prompting the issues on appeal are as follows. Jackson-Flavius and George Jno-Lewis were involved in an intimate relationship. On March 28, 2010, Jackson-Flavius and Jno-Lewis engaged in a domestic altercation at Jackson-Flavius' home, that culminated in an injury to Jno-Lewis' eye. Jackson-Flavius was eventually charged with domestic assault for this event.

■■■ ■■■ ■■■

At trial, Jno-Lewis and Jackson-Flavius gave entirely different accounts of their altercation. Jno-Lewis' account of the altercation for the prosecution was that after he arrived at Jackson-Flavius' home, Jackson-Flavius asked him about a woman who was in his company on a specific occasion. She then accused him of being mendacious about his relationship with that woman, to whom he had previously given a ride. Jackson-Flavius then proceeded to assault Jno-Lewis with a knife, inflicting a wound near his eye, causing his eye to become swollen and blood to flow from his nose. Additionally, Jackson-Flavius truculently demanded that Jno-Lewis tell her the identity of the woman and warned him that if he socialized with another woman, she would remove his other eye. At trial, Jackson-Flavius gave a different version of the facts surrounding the altercation, contending that after a telephone conversation with Jno-Lewis, she heard a noise inside her house and saw Jno-Lewis run into her kitchen. Jackson-Flavius testified that she asked Jno-Lewis what he was doing and how he got inside her house, and that he responded by demanding to know what other man was sleeping in the house. Jackson-Flavius further testified that after she ordered Jno-Lewis to leave her house, he began to punch her in the stomach and hit her with a broom stick. She claimed that Jno-Lewis brandished a knife and that she then retrieved her own knife from under a pillow. Jackson-Flavius testified that Jno-Lewis grabbed her and that when she escaped, she then struck him with the knife near his eye, and called the police. After the police interviewed both Jno-Lewis and Jackson-Flavius, and each received medical treatment, Jackson-Flavius was arrested and advised of her rights. The police officers later testified that they based their decision to arrest Jackson-Flavius on their interviews of both individuals, the wounds inflicted upon each, and an investigation into the causes of the state of disarray in Jackson-Flavius' home immediately following the altercation.

Jackson-Flavius was then charged with third-degree assault. At trial, Jackson-Flavius claimed self-defense in order to rebut the charge of third-degree assault in the context of domestic violence. At the conclusion of the People's case, the defense made a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure and argued that the People did not prove beyond a reasonable doubt the absence of self-defense. The trial court denied the Rule 29 Motion at the conclusion of both the

People's case and the defense's case. The parties never objected to the jury instructions on self-defense as proposed by the trial court.

The trial court thereafter issued final jury instructions, including an instruction on the elements of title 14, section 297(2) of the Virgin Islands Code — assault in the third degree. An instruction on what constituted a "deadly weapon" was also included in the final jury instructions. The jury found Jackson-Flavius guilty of assault in the third degree. The trial court memorialized this verdict in an Amended Judgment dated August 23, 2010. Thereafter, the trial court sentenced Jackson-Flavius to two years imprisonment with all but one day suspended. She was also given credit for one day of time already served in pretrial incarceration and was further sentenced to two years probation. This timely appeal ensued.

## II. JURISDICTION AND STANDARD OF REVIEW

"The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). This appeal emanated from a final judgment of the Superior Court. *See, e.g., Potter v. People*, 56 V.I. 779, 787 (V.I. 2012) (explaining that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *People v. Thompson*, 57 V.I. 342, 348 (V.I. 2012); *Berne Corp. v. Gov't of the V.I.*, 570 F.3d 130, 138 n.13, 51 V.I. 1253 (3d Cir. 2009). Generally, we review the wording of an instruction for abuse of discretion. *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006) (citing *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995)). However, "in the absence of an objection to a jury instruction, we review for plain error." *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005); *see also Williams v. People*, 55 V.I. 721, 728 (V.I. 2011). Under the plain error standard, an appellate court may correct an error not raised at trial if it finds 1) an error, 2) that is plain, 3) that affects substantial rights, and 4) if, in its discretion, " 'the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings.' " *Dobson*, 419 F.3d at 236 (quoting *United States v. Haywood*, 363 F.3d 200, 206-07, 45 V.I. 800 (3d Cir. 2004)); *see also Brown v. People*, 56 V.I.

695, 701 (V.I. 2012). When reviewing a defendant's challenge of the sufficiency of the evidence in a criminal case, after the verdict of a jury has found him guilty, this Court views all evidence in the light most favorable to the government. *Christopher v. People*, 57 V.I. 500, 514 (V.I. 2012); *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009); *United States v. Bornman*, 559 F.3d 150, 152, 51 V.I. 1170 (3d Cir. 2009).

## III. ISSUES

Jackson-Flavius propounds the following issues for our consideration.

A. Whether the trial court erroneously instructed the jury by imparting to them the elements of a crime for which Jackson-Flavius was not charged;

B. Whether the People met its burden of proving beyond a reasonable doubt, the absence of the affirmative defense of self-defense;

C. Whether the trial court imposed upon Jackson-Flavius an illegal split-sentence; and

D. Whether the trial court erred when it allowed the testimony of a lay witness on a subject on which Jackson-Flavius contends expert testimony was required.

## IV. DISCUSSION

### A. The Jury Instructions were not Erroneous

■ To determine whether the Superior Court erred in its jury instructions, we must view the instructions as a whole to determine whether they were "misleading or inadequate to guide the jury's deliberation." *Prince v. People*, 57 V.I. 399, 409 (V.I. 2012) (quoting *Fleming v. People*, 775 F. Supp. 2d 765, 768, 55 V.I. 1016, 1020 (D.V.I. App. Div. 2011)). Jackson-Flavius argues that she was prejudiced by the trial court's jury instruction on the charge of third-degree assault under 14 V.I.C. § 297(2) because the jury instructions embodied elements of the crime of carrying or using a dangerous weapon under 14 V.I.C. § 2251, rather than the elements of the crime of assault with a deadly weapon under 14 V.I.C. § 297(2). Jackson-Flavius asserts that the "jury was not instructed to examine the weapon under section 297" as a deadly weapon but that the trial court instead "instructed the jury to use a lower standard

and wider net — 'dangerous' or 'deadly weapon' — to convict Jackson-Flavius." (Appellant's Br. 13, 16.) Jackson-Flavius also argues that since there was no deadly injury in this case, the People did not prove that the weapon was deadly. (Appellant's Br. 13.) We find that Jackson-Flavius' arguments ignore certain obvious facts concerning the altercation.

Jackson-Flavius was charged with "assault[ing] another with a deadly weapon" under 14 V.I.C. § 297(2). The final jury instructions, which Jackson-Flavius asserts are erroneous, are as follows:

> In order to prove the offense of assault in the third degree, a crime of domestic violence as charged in count I of the Information, The People must prove each of the following elements beyond a reasonable doubt: On or about March 28, 2010 on St. Thomas[,] U.S. Virgin Islands, Theodora Jackson-Flavius used or attempted to use unlawful violence against a person with whom she had an intimate relationship with a deadly weapon, a knife with intent to injure George Jno[-]Lewis; whoever attempts to commit a battery or make a threatening gesture showing in itself and an immediate intention coupled with an ability to commit a battery, commits an assault; whoever uses any unlawful violence upon the person of another with intent to injure him or who[sic], whatever the means or degree of violence used, commits an assault and battery.
>
> Deadly weapon is an object that is deadly by its nature or that is used or may be used in such a manner that is calculated to or likely to produce death or *serious bodily harm*. Whether an object is a deadly weapon depends on the essential character of the object and the manner in which it is used. Under Virgin Islands law, a deadly weapon includes, but is not limited to, any dagger, dirk, dangerous knife, razors, stiletto or any other dangerous or deadly weapon if possessed, born[e] or transported or carried by or had under the proximate control of one who does so with intent to use the item unlawfully against another.

(J.A. at 226-27.) (emphasis added). Jackson-Flavius argues that the instructions should not have included any part of the provisions of 14 V.I.C § 2251, which in subsection (a)(2) makes it a crime to "with intent to use the same unlawfully against another, ha[ve], possess[ ], bear[ ], transport[ ], carr[y] or ha[ve] under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon . . . ."

■ In this case, it is obvious that use of the provision of 14 V.I.C. § 2251 in the final jury instructions was an attempt to define what is a deadly weapon. Jackson-Flavius appears to assert that because a knife is specifically delineated as a dangerous knife in section 2251, it cannot be also characterized as a deadly weapon under 14 V.I.C. § 297. Jackson-Flavius is suggesting that the words "dangerous" and "deadly" be characterized with two separate and distinct meanings and that weapons can only be either dangerous or deadly but not both. However, to characterize weapons as Jackson-Flavius suggests would be to ignore the fact that the words are synonymous — meaning that a dangerous weapon can be deadly and a deadly weapon is obviously also a dangerous weapon. *See Phipps v. Gov't of the V.I.*, 241 F. Supp. 2d 507, 510 (D.V.I. App. Div. 2003) (the Court decided to apply the common law standard of a "deadly weapon" in determining whether an object constituted a "dangerous weapon"). Furthermore, "[a]lthough usu[ally] distinct, the terms deadly weapon and dangerous weapon are sometimes used interchangeably." MERRIAM-WEBSTER DICTIONARY OF LAW 121 (Collector's ed. 2005). Indeed, we have held that "[t]his common interchangeable use of the two terms further illustrates that the terms are sufficiently synonymous and that using one word instead of another would not create any misunderstanding for a reasonable jury." *Prince*, 57 V.I. at 411 ; *see also, Christopher*, 57 V.I. 513 (concluding, based on rationale of holding in Prince, that "the interchangeable use of the phrases 'dangerous weapon' and 'deadly weapon' [could] not confuse or mislead jurors").

■ Therefore, in determining whether the trial court erred, we examine whether a dangerous knife as listed under section 2251 can be considered a deadly weapon under section 297. A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury. *See generally, Christopher*, 57 V.I. at 513; *Prince*, 57 V.I. at 408-409. Therefore, whether a weapon is deadly depends upon two factors: (1) what it intrinsically is, and (2) how it is used. If almost anyone can kill with it, it is a deadly weapon when used in a manner calculated to kill. *Phipps*, 241 F. Supp. 2d at 510 (quoting *Gov't of the V.I. v. Robinson*, 29 F.3d 878, 886, 30 V.I. 428 (3d Cir. 1994)).

■ In *Christopher*, we gave this analysis of the two terms when used in jury instructions:

724

In *Prince*, we addressed whether using the phrases "deadly weapon" and "dangerous weapon" interchangeably in jury instructions under sections 297 and 2251 was plain error. First, we noted that the basic premise of Prince's argument — that the words "deadly" and "dangerous" have a significantly different meaning — is not supported by most legal authorities. *Id.* ("A deadly weapon is generally described as any firearm or other device, instrument, material, or substance that, from the manner in which it is used or is intended to be used, is calculated or likely to produce death. In some states the definition encompasses the likelihood of causing either death or serious physical injury. Likewise, the term dangerous weapon is defined as being an object or device, that because of the way it is used, is capable of causing serious bodily injury. Both definitions are similar, except that the term deadly weapon includes a likelihood of causing death." (internal quotation marks, citations, and alterations omitted)). We went on to point out that "[t]his common interchangeable use of the two terms further illustrates that the terms are sufficiently synonymous and that using one word instead of another would not create any misunderstanding for a reasonable jury."

57 V.I. at 573.

■ In the present case, the People presented evidence that Jackson-Flavius used the knife in a manner that could cause serious bodily injury. For instance, when Jackson-Flavius struck Jno-Lewis with the knife near his eye, it became a weapon that was likely to cause serious bodily injury. Although Jno-Lewis did not die, he was seriously injured; therefore, the knife constituted a deadly weapon. It is noteworthy that because of Jno-Lewis' injury he was transported by ambulance to a hospital and received medical treatment for his injury. Thus, the trial judge properly instructed the jury on the elements of the crime, including defining what constitutes a deadly weapon.

Importantly, the human eye is a vital organ to the human body. Notably, it is not encased with the same type of muscular protective structure as the muscular structures of the human arms, thighs and calves that offer some modicum of protection to the body's bone structures of these body parts from sharp objects or weapons. *See generally* AM. MED. ASS'N, COMPLETE MEDICAL ENCYCLOPEDIA 563-38 (Jerrold B. Leikin & Martin S. Lipsky eds., 1st ed. 2003). Importantly, the loss of sight in one's

eye or the onset of severe vision impairment can adversely impact a person's daily living activities such as operating a vehicle and can likewise evolve into a life-changing disability. Irrefutably, Jackson-Flavius' unlawful assault upon Jno-Lewis, even though it was not fatal, was reasonably calculated to inflict irreparable damage to Jno-Lewis' body by causing injury to his eye. Her intent to cause serious bodily injury was manifested in her verbal threat to damage one of Jno-Lewis' eyes, if he refused to divulge the identity of the woman to whom he gave a ride. Likewise, her overt attempt to permanently destroy Jno-Lewis' eye with the knife, prompting him to seek exigent medical treatment at a hospital, manifested her intent to inflict serious bodily harm upon Jno-Lewis. Accordingly, Jackson-Flavius' assault was committed with a deadly weapon and was calculated to inflict serious bodily injury to one of Jno-Lewis' most vital body organs. The instructions pertaining to deadly or dangerous weapons were neither misleading nor inadequate to guide the jury's deliberations and no reversible error is manifested. *Prince*, 57 V.I. at 409.

## B. The Jury Found that the People Proved Beyond a Reasonable Doubt the Absence of the Affirmative Defense of Self-defense

On appeal, Jackson-Flavius argues that the evidence presented by the People was insufficient to prove that she was not acting in self-defense when she assaulted Jno-Lewis with the knife. Under Virgin Islands law, "once a defendant introduces evidence from which the jury could find the elements of self-defense, the prosecution has the burden of proving its absence beyond a reasonable doubt." *Robinson*, 29 F.3d at 882 n.3 (citing *Gov't of the V.I. v. Smith*, 949 F.2d 677, 680 (3d Cir. 1991)); *see generally Phipps v. People*, 54 V.I. 543, 547-49 (V.I. 2011). It is evident in this case that the People and the defense presented contradictory evidence as it relates to the events that occurred on March 28, 2010.

The People presented evidence that on the day of the assault, Jno-Lewis, while at Jackson-Flavius' house, was attacked by Jackson-Flavius with a knife, and she stabbed him with the knife near his eye. This evidence was supported by Jno-Lewis' testimony and by investigative reports of the police officers. The People presented evidence to satisfy each element of the crime. Additionally, the People presented evidence to rebut Jackson-Flavius' self-defense claim to wit: photographs, medical

reports, and police officers' testimony that contradicted Jackson-Flavius' version of the assault. Importantly, if the jurors believed Jno-Lewis' version of the altercation, as judges of the credibility of witnesses, they would also reject Jackson-Flavius' contention that she acted in self-defense.

█ In its final jury instructions, the trial court rendered a proper instruction regarding the People's burden of proof on the affirmative defense of self-defense. The following is an excerpt of the relevant final jury instruction:

> Once the Defendant presents some evidence that she acted in self-defense, The People have the burden of proving the absence of self-defense beyond a reasonable doubt. After considering all of the evidence if you're not convinced beyond a reasonable doubt that the Defendant was acting other than in self-defense at the time the offense was committed, then you must find the defendant not guilty of the offense.

(J.A. at 230-231.) Jackson-Flavius did not object to the wording of this portion of the instructions, and the jurors never requested the trial court's assistance to further clarify the final instructions. Considering the evidence and being properly instructed, the jury found Jackson-Flavius guilty. We perceive no reason to disturb the jury's verdict. *See, e.g., Augustine v. People*, 55 V.I. 678, 685 (V.I. 2011) (stating an appellate court "must presume that jurors followed the instructions that they were given").

### C. The Trial Court did not Abuse its Discretion when it Imposed a Split-sentence

Jackson-Flavius challenges the sentence imposed for the conviction. She argues that the trial court imposed an illegal split-sentence because the total punishment exceeds the "term of imprisonment announced by the court." (Appellant's Br. 26.) Under this rationale, Jackson-Flavius notes that the trial court imposed a term of imprisonment of two years, suspended all but one day, which represented the time Jackson-Flavius had already served in pretrial incarceration, and imposed probation for two years. (*Id.*) Jackson-Flavius argues that the two years of probation, plus the one day of time served, exceeds the total punishment imposed because the maximum permissible duration of probation is two years minus one day. (*Id.*) For this reason, Jackson-Flavius alleges that her

sentence was illegal under title 5, section 3711(a) of the Virgin Islands Code. This section provides:

> Upon entering a judgment of conviction of any offense against the laws of the Virgin Islands not punishable by life imprisonment, the district court or a Superior Court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, *may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.*

(emphasis added). Jackson-Flavius focuses upon the italicized words. This phrase allows a court to suspend the "execution" of the remainder of a sentence, and then place the defendant "on probation for such period and upon such terms and conditions as the court deems best." Jackson-Flavius contends that the phrase "for such period" (the period of probation) could either refer to the preceding suspended portion of the prison term or be qualified by the subsequent phrase "as the court deems best." If the earlier phrase defines the limit of probation, then for reasons outlined above, Jackson-Flavius' probationary period must be reduced by one day.

This Court has addressed illegal split-sentences in other opinions. In *Murrell v. People*, 54 V.I. 327, 336 (V.I. 2010), we held that a sentence in which the combined period of incarceration and probation exceeds the maximum period of incarceration authorized by law is an illegal split-sentence. *Id.* (citing *Dunlop v. People*, S.Ct.Crim. No. 2008-0037, 2009 V.I. Supreme LEXIS 41, at *21 (V.I. Sept. 15, 2009) (unpublished)). In *Brown v. People*, where we interpreted a provision of section 3711, this Court also ruled that "a split sentence that imposes probation without suspending a portion of the sentence is illegal." 55 V.I. 496, 506 (V.I. 2010) (citing *Gov't of the V.I. v. Martinez*, 239 F.3d 293, 297 (3d Cir. 2011). However, in this case the trial court did not impose a sentence in which the combined period of incarceration and probation exceeded the maximum period of incarceration authorized by law,[1] which is five years. Additionally, the trial court did not impose probation without suspending

---

[1] Title 14, Section 297 of the Virgin Islands Code states that whoever commits assault in the third degree "shall be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both."

a portion of the sentence. In her brief, Jackson-Flavius provided little support on this issue. Furthermore, there are no published opinions in this jurisdiction addressing the precise issue that Jackson-Flavius raises.

The general practice of courts in this and other jurisdictions regarding sentencing has not been sufficiently consistent to offer insight on the appropriate interpretation of the statute. It is notable that title 5, section 3711 of the Virgin Islands Code contains the same language as the federal statute, 18 U.S.C. § 3651.[2] Therefore, federal cases interpreting the federal statute and local cases interpreting the local statute are both instructive in examining the general practice of courts in imposing split sentences.

A number of courts have imposed a sentence, suspended a portion of that sentence, and instituted probation only for the suspended period. *See, e.g., United States v. Williams*, No. Crim. 1999-25, 2000 U.S. Dist. LEXIS 22677, at *37 (D.V.I. May 10, 2000) (sentence imposed under 5 V.I.C. § 3711(a) — five and one-half years sentence imposed, six months to be served in prison and five years suspended; probation imposed for maximum of five years); *Galloway v. People*, 57 V.I. 693, 698 (V.I. 2012) (sentence imposed for one year in prison, with one year suspended and probation imposed). In contrast, other courts have suspended a portion of the sentence, but ordered probation for a period of time that exceeds the period of the suspended part of the sentence. *United States v. O'Brien*, 972 F.2d 47, 50 (3d Cir. 1992) (three months suspended sentence and two years of probation). Importantly, neither of these examples indicates that the trial court was limited to imposing probation for only the suspended period of the sentence.

■ The United States Court of Appeals for the Second Circuit has issued an opinion interpreting the federal statute containing the same language as our local statute. *United States v. Nunez*, 573 F.2d 769 (2d Cir.

---

[2] 18 U.S.C. § 3651. Suspension of sentence and probation

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

1978). The Second Circuit in the first instance analyzed the issue with which we have been presented here and concluded that the term "for such period" should be read in conjunction with the remainder of the clause "and upon such terms and conditions as the court deems best." *Id.* at 771. In arriving at this conclusion, the Second Circuit found that "[t]he term 'for such period' in the first paragraph of section 3651 has no specific antecedent and must be modified by the language immediately following." *Id.* Therefore, the Court concluded that "the length of the probationary term . . . is solely within the discretion of the court . . . ." *Id.* Since the Second Circuit issued this opinion in 1978, there has been no history of reversal or disagreement nor has there been any legislative action amending the provisions of the statute.

 While we are not bound to follow the decision or interpretation of the Second Circuit in interpreting 5 V.I.C. § 3711, absent further evidence indicating otherwise, this interpretation seems to be consistent with the spirit of the statute considering other language in the statute, the practice of courts, and the general doctrine of our law that sentencing is within the trial judge's discretion. The fourth paragraph of title 5, section 3711(a) states that "[t]he court may revoke or modify any condition of probation, or may change the period of probation." This provision supports the basic principle that the trial court has discretion when implementing both the period of probation and the conditions of probation. Certainly, if the court's power to order probation were restricted to the suspended period of the sentence, this provision would almost become a nullity. However, we must avoid construing a statute in a way that renders any of its language meaningless. *See Brown v. People*, 54 V.I. 496, 514 (V.I. 2010) (citing *In re Sherman*, 49 V.I. 452, 466 (V.I. 2008) (Swan, J., concurring) ("statutes are . . . construed so as not to render [their] provisions . . . superfluous or unnecessary")). Furthermore, it is well settled that sentencing is a matter for which the trial court can exercise discretion. *See Chciuk-Davis v. People*, 57 V.I. 317, 321 (V.I. 2012) (citing *Brown v. People*, 56 V.I. 695, 699 (V.I. 2012); *United States v. Booker*, 543 U.S. 220, 233, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)).

 For these reasons, we conclude that the statute should not be interpreted as Jackson-Flavius suggests. As previously noted, a sentence is illegal when the term of imprisonment combined with the term of probation exceeds the statutory maximum penalty for the crime. A

sentence is also illegal when the judge imposes a period of probation without suspending a portion of the sentence. Neither of these circumstances is present in this case. Therefore, we conclude that the trial court did not abuse it discretion when it imposed Jackson-Flavius' sentence.

### D. The Trial Court did not Abuse its Discretion When it Admitted Lay Opinion Testimony on the Age of a Wound

Jackson-Flavius argues that the trial court abused its discretion by allowing a police officer to testify regarding the age of a wound on Jackson-Flavius' body. According to Jackson-Flavius, an expert witness, preferably one with medical training, was needed to testify about the age of her wound because such a determination required scientific and technical knowledge. Rule 701 of the Federal Rules of Evidence addresses the parameters of lay witness testimony.

**Rule 701. Opinion Testimony by Lay Witnesses**

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[3]

As stated by the rule, testimony cannot be regarded as lay opinion if it is based on scientific, technical, or other specialized knowledge. *United States v. DeMuro*, 677 F.3d 550, 561 (3d Cir. 2012) (citing FED. R. EVID. 701(c)). The purpose of Rule 701(c) is to "prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert

---

[3] The wording of FED. R. EVID. 701 at the time of the present defendant's trial in August of 2010 was substantially the same as current Rule 701 quoted above, and no change relevant to the present case was involved in the restructuring of the language into the form quoted above when the United States Supreme Court "restyled" the Rules of Evidence on December 1, 2011. *See, e.g., United States v. Jean-Guerrier*, 666 F.3d 1087, 1091 n.2 (8th Cir. 2012) (observing that the changes made to the Rules of Evidence as part of the December 2011 restyling project were "intended to be stylistic only").

testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth" in Federal Rule of Civil Procedure Rule 26. *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (citing Advisory Committee Notes on the purpose of Rule 701(c)); *see also Bank of China v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004).

■ As explained by the Fifth Circuit Court of Appeals, "[t]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.' " *United States v. Ebron*, 683 F.3d 105, 136-37 (5th Cir. 2012) (citation omitted). A lay opinion is based on an observation that can be made by the average person based on common trends, knowledge or experiences in everyday life. *Id.*

■ ■ Jackson-Flavius alleged that Jno-Lewis attacked her and that as a result she sustained an injury that left a bruise on her arm. When the police arrived on scene, Jackson-Flavius pointed to the mark on her arm as evidence of Jno-Lewis' assault upon her. Therefore, the police officers acquired personal knowledge of Jackson-Flavius' existing bruise and such knowledge was rationally based on the officer's perception of the bruise. Additionally, the officer's testimony was helpful to the determination of a fact in issue, which was Jackson-Flavius' claim of self-defense. At trial, the police officer testified that based upon her observation of the mark on Jackson-Flavius' arm, while at the scene immediately following the altercation between Jackson-Flavius and Jno-Lewis, the mark or bruise on Jackson-Flavius' arm was not fresh or new. The determination of whether a mark or bruise on a person's body is fresh does not require scientific, technical, or specialized knowledge. *See State v. Thacker*, No. 04CA18, 2005 Ohio App. LEXIS 1216, at *2 (Ohio Ct. App. March 16, 2005) (permitting lay testimony on the age of the victim's injuries); *J.C. v. State*, 892 S.W.2d 87, 88-89 (Tex. App. 1995) (finding no abuse of discretion in the admission of lay testimony regarding the age of bruises). Such injuries are common to the average adult, who during a lifetime will become familiar with bruises and cuts upon the human body. Furthermore, because of the human body's susceptibility to minor injuries, the average person is familiar with bruising and the healing process of bruises, and therefore, can form an opinion regarding the approximate age of bruises and cuts on the human body. It is simply a matter of everyday common knowledge, as to whether

732

a bruise was inflicted within a twenty-four hour period as opposed to a bruise inflicted several days earlier. Accordingly, the police officer's testimony regarding the age of Jackson-Flavius' bruise mark did not require scientific, technical or specialized knowledge to determine whether the bruise was inflicted an hour earlier or at least a day earlier or a longer period of time. Therefore, the trial court did not abuse its discretion in admitting the evidence.

Furthermore, even if it was error to admit the layperson testimony, it would be harmless for the following reason. If the trial court did not admit the lay opinion, there was other evidence in the present record indicating that the wound was old. A medical examination upon Jackson-Flavius was conducted at the hospital shortly after the altercation. The hospital's medical report was properly admitted in evidence during trial, and it confirmed that the wound or bruise on Jackson-Flavius' arm was old. The relevant testimony between the prosecutor and the hospital's custodian of medical records was as follows:

Q. Could you please read for us what it says that is written in bold after "other wound description"?

A. It says, "Old, small, dark in color bruise to left upper arm quarter size".

(J.A. at 95-98.) For these reasons, we conclude that the trial court did not err in admitting the testimony regarding the bruise or wound on Jackson-Flavius.

## V. CONCLUSION

For the above stated reasons, we affirm Jackson-Flavius' conviction and the August 23, 2010 Judgment of the Superior Court.