# SHAKIEME S. FREEMAN, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2013-0085

Supreme Court of the Virgin Islands

November 19, 2014

VANESSA-NOLA PRATT, ESQ., The V-Law Group, PLLC, Washington, DC, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(November 19, 2014)

SWAN, *Associate Justice.* Appellant, Shakieme S. Freeman, was charged in a nine-count information related to the shooting death of Aquil Abdullah. Freeman challenges his conviction alleging that the evidence was insufficient for a conviction for the crime of aiding and abetting reckless endangerment, that the final jury instructions were defective, and that 14 V.I.C. § 625 is void for vagueness. Finding that there was sufficient evidence for a reasonable jury to properly convict Freeman as an aider and abettor of reckless endangerment, and that there is no merit in his other contentions on this appeal, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On November 20, 2010, Abdullah and friends attended the Jaguar's Nightclub located above a fast food restaurant which is situated on a lot contiguous to Mandela Circle, a public intersection on St. Thomas. Prior to the club closing at 4 a.m., Abdullah departed the nightclub and proceeded toward a friend's car that was exiting the tramway parking lot located across the street. While crossing the street, Abdullah threw two cups in the air that struck a red truck that was passing by. This prompted the driver of the red truck, Lorn Henley, to exit his vehicle and approach Abdullah. A verbal altercation immediately ensued between Abdullah and Henley. Jeffroy Jeffers, a friend of Abdullah, positioned himself between the two men and facing Henley. Jeffers testified at trial that Henley said, "nobody gone play me for no f***ing punk." Jeffers further testified that he recalled Henley reaching in his back pocket. According to Jeffers the argument continued with the group moving toward the back of the truck. The pugnacity of both men is illustrated by Jeffrey's testimony that Henley said, "I get my f*** on me" to which Abdullah responded, "well, bust your f*** then."

539

Dale George was also at Jaguar's Nightclub on November 20, 2010. He attended with Freeman, who was a passenger in his vehicle that night. George stated that at the end of the night, Freeman and his two other passengers were leaving the nightclub when George saw his friend Henley exit his vehicle in a bellicose manner. Freeman responded by telling George to stop the vehicle. When Freeman exited the car, he proceeded directly toward the altercation. More individuals approached the commotion and soon thereafter, a barrage of gunshots were fired. Abdullah was fatally shot and Jeffers was shot in his foot. Henley departed the scene in his red truck, headed toward the western end of St. Thomas. George also departed the scene after all his passengers, including Freeman, returned to the vehicle. George further testified that he saw Freeman in possession of a firearm when he returned to the vehicle. George testified that Freeman told him while they were driving toward their homes that Freeman might have shot someone in the leg and that he had emptied his gun's clip. George also testified that after November 20, 2010, Freeman instructed him to "never bring up that what happened." He also said that Freeman created a version of the incident for George to describe if George were questioned, and he further informed George that his lawyer wanted to see him.

Freeman was arrested and subsequently charged in a nine-count information. A jury trial was conducted. In all counts Freeman was charged both as a primary actor and as an aider and abettor. The jury returned a verdict of guilty only on Count 9, aiding and abetting first degree reckless endangerment. Freeman joined a post-trial motion for judgment of acquittal filed by his co-defendant, Henley, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, which the trial court denied. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012) (citing *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008)) and *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). The

post-trial motion for judgment of acquittal, in which Freeman joined that was denied by the Superior Court after a hearing on July 12, 2013, and the judgment imposing sentence was entered on October 4, 2013. Freeman timely filed this appeal on October 9, 2013. Therefore, this Court has jurisdiction over this matter. *See Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purpose of 4 V.I.C. § 32(a))

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the trial court's application of law is plenary and its findings of facts are reviewed for clear error. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2013); *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). When the Court is presented with a challenge to the sufficiency of the evidence, we will "examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the government as the verdict winner." *Allen v. People*, 59 V.I. 631, 635 (V.I. 2013) (quoting *United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012)) (internal quotation marks omitted); *Coleman v. Johnson*, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012). A defendant seeking to overturn his conviction on the basis of the sufficiency of the evidence "bears a very heavy burden." *Castor v. People*, 57 V.I. 482, 488 (V.I. 2012) (quoting *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) (internal quotation marks omitted)).

## IV. DISCUSSION

### A. There was sufficient evidence to convict Freeman.

Freeman asserts that there is insufficient evidence to convict him of aiding and abetting first degree reckless endangerment. First degree reckless endangerment is defined in 14 V.I.C. § 625 as:

> (a) A person is guilty of reckless endangerment in the first degree when, under the circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct in a public place which creates a grave risk of death to another person. Reckless endangerment in the first degree shall be considered as a felony.

. . . .

(c) The terms as used in this section shall have the following meaning unless the context clearly indicates otherwise:

(1) "reckless endangerment" means when a person consciously and knowingly engages in conduct or behavior that may pose intentional harm or physical injuries to another human being or property.

(2) "public place" means a place to which the general public has a right to resort; but a place which is in point of fact public rather than private, and visited by many persons and usually accessible to the public.

 Aiding and abetting is governed by 14 V.I.C. §11(a), which states "Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Further, to obtain a conviction on aiding and abetting, the People were required to show that Freeman "associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or actions to make it succeed." *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (citations and internal quotation marks omitted). Additionally, "[u]nder the theory of aiding and abetting, guilt of an accused in a criminal case may be established without proof that he or she personally did every act constituting the offense alleged." *Id.* The evidence presented at trial unequivocally indicates that a rational jury could find that Freeman acted with depraved indifference for human life by discharging a firearm in proximity to a large crowd. In *Augustine v. People*, 55 V.I. 678, 689 (V.I. 2011), this Court stated, "the act of firing a loaded gun at or near someone is, by definition, the epitome of reckless conduct creating a grave risk of death under circumstances evincing an extreme indifference to human life." *Id.* at 689 (citation omitted).

 The evidence presented at trial confirms that Freeman was a shooter during the chaos and pandemonium in Mandela Circle.[1] George,

---

[1] Although not raised as an issue by Freeman, we note that the crime of reckless endangerment must occur in a *public place*. 14 V.I.C. § 625(a). A public place is defined as "a place to which the general public has a right to resort; but a place which is in point of fact public rather than private, and visited by many persons and *usually accessible* to public." *Augustine v. People*, 55 V.I. 678, 689 (V.I. 2011) (quoting 14 V.I.C. § 625(c)(2) (emphasis added)). In this case, the record lacks a showing of any effort by the prosecution to expressly prove this element. Nevertheless, given the factual circumstances in this case, coupled with

who transported Freeman from the crime scene that night, testified that he saw Freeman return to George's vehicle with a gun in his possession. He further testified that Freeman told him that he might have shot someone in the leg and that he thought he had emptied his gun's clip. Freeman's self-inculpatory admission statement is compelling evidence that a rational juror could consider in finding Freeman guilty of the charge. The defense elicited testimony that George has poor eyesight. However, even with poor eyesight, it seems very plausible that George would have been capable of seeing a firearm in Freeman's hand, given his physical proximity as the driver of the vehicle, to Freeman, who was a passenger in the same vehicle, and who entered it and was seated near George.

■ As discussed in *Todman v. People*, 59 V.I. 675, 683 (V.I. 2013), the federal circuit courts have stated that aiding and abetting is a lesser included offense of every charge, and a defendant charged as a principal can be convicted as an aider and abettor. Unlike *Todman*, where the defendant was only charged with aiding and abetting the unauthorized possession of a gun, 59 V.I. at 682, Freeman was charged both as a primary actor and an aider and abettor. Although the evidence presented in this case supports a conviction of Freeman as a primary actor, there is sufficient evidence that Freeman discharged a gun in a public place; therefore, the jury was permitted to convict him of aiding and abetting reckless endangerment. *Hughes v. People*, 59 V.I. 1015, 1022 n.4 (V.I. 2013) ("a conviction for voluntary manslaughter as a lesser included offense may stand even absent evidence of a sudden quarrel or heat of passion, as long as the evidence was sufficient to convict the defendant of the greater offense.") (citing *State v. Harris*, 27 Kan. App. 2d 41, 998 P.2d 524, 528 (2000) (collecting cases)); *Todman*, 59 V.I. at 683. Because there was sufficient evidence to support the jury's verdict, we affirm the conviction.

### B. Although the Superior Court did not supply jury instructions in the precise manner advocated by Freeman, the jury instructions given were sufficient.

Freeman asserts that the trial court failed to properly instruct the jury on the crime of aiding and abetting. Specifically, he underscores the

---

Freeman's failure to raise the issue, we find that there is sufficient evidence the crime occurred in a public place.

failure of the trial court judge to include the terms "aiding and abetting" when he imparted to the jury the requirements for a conviction on Count 9. Freeman further stated that "specific intent" was omitted from the instructions as well. Although the absence of those terms was to the displeasure of Freeman, it was not error warranting a reversal.

When a timely objection is made at trial regarding jury instructions, the appellate court reviews the trial court's decision for an abuse of discretion. *Prince v. People*, 57 V.I. 399, 405 (V.I. 2012). Freeman did not object to the instruction at trial and raises it for the first time on appeal. When no objection is made at trial, this Court will review for plain error. *Id.* To find plain error, this Court must find (1) an error, (2) that is plain, and (3) that it affected substantial rights. If we determine that the error meets those requirements, we may grant relief in our discretion if (4) we find the error seriously affects the " 'fairness, integrity, or public reputation of the judicial proceedings.' " *Jackson-Flavius*, 57 V.I. at 721 (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

■ "[T]he validity of a challenge to jury instructions must be considered against the complete jury instructions and the whole trial record." *Burke v. People*, 60 V.I. 257, 264 (V.I. 2013). "A jury instruction will generally not be invalidated unless it is shown that the instruction substantially and adversely impacted the constitutional rights of the defendant and impacted the outcome of the trial." *Prince*, 57 V.I. at 405. "[A] claim of improper instruction will rarely justify reversal of a criminal conviction when no objection has been made in the trial court." *Id. See also Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977). Most importantly, we have stated that "[a] jury instruction that omits a required element of the offense or defense will be disregarded if 'it does not impact substantial rights and is harmless beyond a reasonable doubt' even if the instruction was objected to at trial." *Prince*, 57 V.I. at 405 (citing *Gilbert v. People*, 52 V.I. 350, 361 (V.I. 2009).

■ Considering the final jury instructions as a whole, including the lengthy discussion on aiding and abetting given by the trial court, the omission of aiding and abetting at the juncture identified by Freeman in the final jury instructions was not an error.[2] Nothing indicates that the trial

---

[2] The Superior Court instructed, "Throughout these instructions, aided and abetted requires that People . . . to prove that the substantive crime was committed and the defendant knew

court's failure to repeat what he had previously stated affected the jurors' ability to make a decision. This argument provides no basis for reversal.

## C. Under Virgin Islands law, verdicts may be inconsistent.

Freeman argues that the fact that the jury considered the same evidence for all the charges against him in this trial "it logically follows that its finding that [he] was not guilty of Counts One through Eight is inconsistent with its finding that [he] was guilty on Count Nine." He further asserts that "it logically follows that Appellant cannot be considered to be aiding and abetting in creating a grave risk of death to another by discharging a gun in a public place since the jury did not find that Appellant was using the gun in the first place."

■ This Court has previously stated that an inconsistent verdict is not a sufficient reason for setting aside a verdict. *Phillip v. People*, 58 V.I. 569, 596 n.31 (V.I. 2013) (citing *People v. Faulkner*, 57 V.I. 327, 333-35 (V.I. 2012)). Like the *Phillip* and *Faulkner* cases, there is sufficient evidence, as discussed above, to sustain Freeman's conviction. This argument fails as a valid reason for reversing Freeman's conviction.

## D. 14 V.I.C. § 625(a) is not void for vagueness.

Freeman also argues that 14 V.I.C. § 625(a) is void for vagueness because "although Section 625(c) provides clarity by defining 'reckless endangerment,' and 'public place,' the statute is still vague because it leaves open the question of what conduct constitutes a grave risk of death to another, wide open to interpretation."

■ ■ This Court has previously addressed the void for vagueness doctrine. In *Codrington v. People*, 57 V.I. 176, 187 (V.I. 2012), we stated that

> "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v.*

---

of the crime and attempted to facilitate it. Furthermore, the People . . . must prove that the defendant associated himself with the venture, that he participated in it as something he wish[ed] to bring about, and that he sought by his words or actions to make it succeed. Further, *the People must prove that the defendant had the specific intent to facilitate the crime.*" (emphasis added).

*Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1986). Therefore, a statute "is unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.' " *LeBlanc v. People*, 56 V.I. 536, 541 (V.I. 2012) (quoting *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)).

In *LeBlanc*, we stated that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975).

██ ██ The underpinning of the void for vagueness doctrine is the constitutional mandate that the statute must provide both notice to citizens and not allow for arbitrary enforcement by law enforcement or the courts. Freeman seems to suggest that in order for 14 V.I.C. § 625 to be constitutional, it must provide an itemized list of actions that would fall within this category, but that is not required by the law. Moreover, Freeman concedes that a reasonable person would have notice of the prohibited conduct under § 625(a). Freeman contends that while "one may reasonably infer that firing gun shots in a public place obviously and clearly constitutes as creating a grave risk of death to another, the statute is silent on whether such conduct falls within this definition." Yet, Freeman's actions indisputably come within the scope of the behaviors proscribed by 14 V.I.C. § 625. *See, e.g., Augustine*, 55 V.I. at 689. Because Freeman's "conduct was clearly proscribed by the statute, he lacks standing and may not challenge the statute as facially vague." *Codrington*, 57 V.I. at 187 n.8 (citation omitted). This argument fails as a sufficient basis for this Court to reverse the jury's verdict.

## V. CONCLUSION

For the reasons elucidated above, Freeman's conviction as an aider and abettor of reckless endangerment in violation of 14 V.I.C. § 625(a) is affirmed.