**TYDEL JOHN, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2014-0030

Supreme Court of the Virgin Islands

September 24, 2015

630

632

MARTIAL A. WEBSTER, SR., ESQ., Law Office of Martial A. Webster, Sr., St. Croix, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., PAUL J. PAQUIN, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 24, 2015)

SWAN, *Associate Justice.* Appellant Tydel John contends that he presented evidence substantially contradictory to the evidence against him which raised reasonable doubt as to his guilt on charges of aggravated rape and unlawful sexual contact, and that the evidence presented by the People of the Virgin Islands was insufficient to convict him on a number of charges in the information. John further asserts that the evidence against him was illegally obtained from suppressed evidence. Lastly, he asserts that a mistrial should have been granted because of the People's failure to disclose information about a separate civil suit by at least one of the victims. Because none of these claims is meritorious, we affirm the judgment and commitment of the trial court.

## I. FACTUAL AND PROCEDURAL HISTORY

John was employed as an elementary school teacher with several primary schools in St. Croix. Allegations of inappropriate conduct between John and his students at one school became known to school officials in November 2007 when outreach program specialists made a presentation to the students regarding "good touch/bad touch" from adults. After the presentation, several students informed the specialists that John had touched them inappropriately. Police officials subsequently investigated these students' allegations.

Police Detective Naomi Joseph obtained a warrant to search John's home for evidence of child pornography as part of the investigation. During the search of John's home, police officers confiscated computers, notebooks, and journals. While the specific contents of the notebooks were never disclosed, the People moved to admit into evidence statements recorded in the notebooks as admissions and as evidence of prior bad acts. John moved to suppress the notebooks on the grounds that there was no probable cause to support the search. The trial court granted John's motion to suppress and the People appealed. On July 1, 2009, we upheld the decision of the trial court to suppress the evidence, finding that no probable cause existed to support the warrant and resultant search of John's residence for child pornography. *People v. John*, 52 V.I. 247, 263 (V.I. 2009).

Consequently, the People filed a two-count information against John on September 30, 2009, charging him with one count of unlawful sexual conduct and one count of child abuse. On January 11, 2012, the People filed a 21-count amended information against John. On August 28, 2012, the People filed a 16-count amended third superseding information charging John with six counts of child abuse, eight counts of unlawful sexual contact in the first degree, and two counts of aggravated rape in the first-degree in offenses against victims K.W., L.C., D.S., A.D., J.R., T.O., M.D., and M.F. (J.A. at 87, 206-11.) The case proceeded to trial and the jury heard testimony from all named victims as well as 30 other witnesses called by the People. (J.A. at 87.) The jury returned verdicts convicting John of all charges except those involving alleged crimes against D.S. (counts four through six) and M.F. (count sixteen).

Subsequently, John filed a motion for a judgment of acquittal for which the trial court granted a dismissal of the child abuse counts (counts

three, eight, eleven, thirteen, and fifteen), but denied the motion as to the remainder of the counts. In a judgment and commitment entered on June 20, 2014, John was sentenced as follows: count one, unlawful sexual contact with victim K.W., 15 years; count two, unlawful sexual contact involving victim L.C., 15 years; count three, unlawful sexual contact with victim L.C., 15 years; count seven, unlawful sexual contact involving victim A.D., 15 years; count nine, aggravated rape in the first degree of victim J.R., 50 years; count ten, unlawful sexual contact involving victim J.R., 15 years; count twelve, unlawful sexual contact with victim T.O., 15 years; and count fourteen, unlawful sexual contact with victim M.D., 15 years. (J.A. at 103-04.) The sentences on counts one, two, seven, twelve, and fourteen were ordered to be served concurrently with each other, and were further ordered to be served concurrently to count nine.[1] *Id.* Count ten was ordered held in abeyance and to be dismissed

---

[1] The Superior Court orally sentenced John to 15 years of imprisonment on count seven and dismissed count eight on March 28, 2014 (J.A. 2245, 2289), but due to a scrivener's error the June 20, 2014 judgment and commitment misidentified the sentence imposed for count seven as the sentence for count three, and failed to indicate that count eight was dismissed. (J.A. 2245.) Given that the Superior Court orally pronounced the 15-year sentence for count seven and the dismissal of count eight at the sentencing hearing on March 28, 2014 and that an amended judgment and commitment would not change the actual sentences imposed for counts seven and eight at sentencing, the Superior Court may issue an amended judgment and commitment that can be substituted, *nunc pro tunc*, for the June 20, 2014 judgment and commitment. *See McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 663 (Mo. 2014) ("Nunc pro tunc emerged as a common law power to allow a court that has lost jurisdiction over a case to maintain jurisdiction over its records to correct clerical mistakes in the judgment arising from either scrivener's errors or from omissions that are indicated in the record but are not recorded in the original judgment."); *Interstate Printing Co. v. Dep't of Revenue*, 236 Neb. 110, 459 N.W.2d 519, 522 (1990) (The purpose of "an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded. It is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered."); *Application of Oklahoma Natural Gas Co.*, 1985 OK 67, 715 P.2d 477, 478 (1985) ("A typical illustration of a nunc pro tunc order exist in a situation where judgment is pronounced from the bench by the trial court in clear and definite terms . . . and later it is determined that the memorial of judgment fails correctly to recite the judgment as rendered by the trial court from the bench."). *See also Azille v. People*, 59 V.I. 215, 220 (V.I. 2012) (judgment and commitment substituted *nunc pro tunc* to "formaliz[e] the sentence"); *Marcelle v. People*, 55 V.I. 536, 540 (V.I. 2011) (recognizing entry of final *nunc pro tunc* order affirming sentence). Even absent *nunc pro tunc* substitution, the Superior Court's sentence for count seven, as pronounced on March 28, 2014, remains fully enforceable. *See* SUPER. CT. R. 5 ("[O]ral orders [of the Superior Court] shall be enforceable pending their reduction to writing.").

upon the completion of sentence pursuant to 14 V.I.C. § 104. This timely appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent· part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." It is well-established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of this statute. *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013). Accordingly, we have jurisdiction over this appeal.

## III. ISSUES AND STANDARD OF REVIEW

On appeal John contends A) that the People failed to show an independent source apart from the information allegedly obtained from suppressed evidence, B) that the trial court erred in failing to declare a mistrial based upon the People's alleged violation of the obligation to disclose exculpatory information pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and specifically that the People failed to disclose that a civil suit had been filed against John, and C) that the evidence was insufficient to convict him of counts one, two, seven, nine, ten, twelve, and fourteen.

The standard of review of the trial court's application of law is plenary, while its findings of fact are reviewed for clear error. *Najawicz v. People*, 58 V.I. 315, 323 (V.I. 2013). We review denials of motions for mistrial for abuse of discretion. *Connor v. People*, 59 V.I. 286, 299 (V.I. 2013). Similarly, we review decisions on motions for a new trial based on *Brady* violations for an abuse of discretion. *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011). When reviewing the sufficiency of the evidence, we review the trial court's determination *de novo* and view the evidence in the light most favorable to the People. *Percival v. People*, 62 V.I. 477, 484 (V.I. 2015). We affirm the conviction when any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt from the evidence presented at trial. *Id.*

## IV. DISCUSSION

### A. Information was not derived from suppressed evidence

During the initial investigation by Officer Joseph into John's alleged inappropriate conduct with his students, she conducted interviews with the alleged victims. These interviews revealed that John possessed two notebooks, in which he allegedly maintained a record of his inappropriate conduct with his students. Officer Joseph recounted this information in an affidavit which was the basis for a search warrant to locate these notebooks in John's home. Officer Joseph also recited in the affidavit that "persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, and computer files in their homes and on their computer." (J.A. at 2312.) Based on these averments the Superior Court found probable cause to issue a warrant to search John's home for evidence of child pornography. In addition to the two notebooks that were identified in the initial investigatory interviews, Officer Joseph also found ten composition-style notebooks hidden in John's bedroom that contained incriminating evidence.

Finding that no probable cause existed to authorize a warrant permitting a search of John's home for child pornography based on the child molestation allegations, this Court affirmed the Superior Court's order that the notebooks and any evidence obtained from them be suppressed. *John*, 52 V.I. at 262-63, *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011).

John argues — for the first time on appeal — that the allegations involving L.C. (counts 2-3), D.S. (counts 4-6), and A.D. (counts 7-8) in the third amended superseding information were based on information found in the suppressed notebooks, and therefore the exclusionary rule applies.[2] When evidence is obtained from an illegal search, the exclusionary rule requires that the evidence and the fruits of that search be excluded from evidence at trial. *Id.* at 263 (an illegal search "can and should be deterred by excluding the fruits of the illegal search");

---

[2] In his Brief, John argues that the offenses against L.C. are found in counts 3, 4, and 5, the offenses against D.S. are found in counts 6, 7, and 8, and the offenses against A.D. are found in counts 9 and 10. However, the counts listed in the Brief do not correspond to the counts listed in the third superseding information.

*Castillo v. People*, 59 V.I. 240, 255-56 (V.I. 2013). The independent source doctrine provides an exception to the exclusionary rule when the evidence to be admitted was obtained from a source independent of the illegal search, or where the "connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." *Id.* at 256 (internal quotation marks and citation omitted); *see Murray v. United States*, 487 U.S. 533, 537, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988); *Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). "When the government relies on the independent source doctrine, it bears the burden of proof by a preponderance of the evidence." *United States v. Gravens*, 129 F.3d 974, 981 (7th Cir. 1997); *Commonwealth v. Ruey*, 2004 PA Super 264, 854 A.2d 560, 577 (2004). John contends that the independent source doctrine does not apply here as an exception to the exclusionary rule because the People have not demonstrated that they obtained information pertaining to the alleged misconduct against L.C., D.S., and A.D. from sources independent of the suppressed notebooks.

 While it is clear that John challenged the admission of the 10 additional notebooks at the trial level, John did not challenge the inclusions of counts 2 to 8 in the third superseding information. Our rules clearly specify that issues not first fairly presented to the Superior Court are waived unless the interest of justice requires that this Court consider them. V.I.S.CT.R. 4(h). Accordingly, because this issue was not fairly presented to the trial court for consideration, it will be reviewed only for plain error. *Freeman v. People*, 61 V.I. 537, 544 (V.I. 2014). "To find plain error, this Court must find (1) an error, (2) that is plain, and (3) that it affected substantial rights. If we determine that the error meets those requirements, we may grant relief in our discretion if (4) we find the error seriously affects the 'fairness, integrity, or public reputation of the judicial proceedings.' " *Id.* (citing *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012)).

██ John resolutely asserts that the identities of L.C., D.S., and A.D. were discovered by the People and police officials from the suppressed notebooks. However, the record confirms by more than a preponderance of the evidence that this information was obtained from independent sources. During the trial, Officer Joseph testified that her investigation involved a number of interviews with current and former students and teachers. (J.A. at 1394-99.) Specifically, Officer Joseph testified to

discovering the identities of D.S., L.C., and A.D. by following leads obtained from contacts with a number of former students. (J.A. at 1397.) Thus, the People more than met their burden to substantiate by a preponderance of the evidence that the information came from sources other than the notebooks. We therefore find that John has not established that the Superior Court erred in holding that the identities of L.C., D.S., and A.D. were admissible under the independent source doctrine.

■ Moreover, even if John did substantiate his claim that the identities of D.S., L.C., and A.D. came from the suppressed notebook, we would still not find plain error in the Superior Court's ruling denying suppression, because the witness' testimony would have been sufficiently attenuated from the original illegal conduct. Under the attenuation exception to the exclusionary rule, courts may admit evidence that would not have been obtained, but for official misconduct, if the causal connection between the illegal conduct and the acquisition of the evidence was so attenuated as to dissipate the taint. *Wong Sun v. United States*, 371 U.S. 471, 491, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The attenuation doctrine has been invoked by courts to admit the testimony of witnesses whose identities were discovered through illegal means. The United States Supreme Court has identified several factors to consider in determining whether the degree of attenuation is sufficient to dissipate the connection between the illegality and testimony. These factors include whether 1) the witness' testimony was freely given and was in no way coerced or induced by official authority, 2) the illegally obtained evidence is not used to question the witness, 3) there was a substantial period of elapsed time between the illegal search and the initial contact with the witness, as well as between that contact and the testimony at trial, and 4) the identity of the witness and the witness' relationship to the defendant were known to those investigating the case at the time of the illegal search. *United States v. Ceccolini*, 435 U.S. 268, 279-80, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978).

■ The warrant to search John's home for the notebooks was issued on December 3, 2007. (J.A. at 2312.) The victims in question were not contacted until the following year. (J.A. at 411, 724.) Both D.S. and A.D. testified that while they were very hesitant to give statements to Officer Joseph, they nonetheless gave those statements because they understood the importance of doing so. (J.A. at 419, 720.) Neither student testified to being coerced by law enforcement to give a statement or to testify at trial.

Further, the record does not support a finding that the suppressed evidence was used to question the witnesses, or that the identities of the victims and their involvement with John were unknown to the People and law enforcement officials prior to the illegal search.

■ The United States Supreme Court in *Ceccolini* advised against a strict application of the exclusionary rule that would "perpetually disable a witness from testifying about relevant and material facts, regardless of how unrelated such testimony might be to the purpose of the originally illegal search or the evidence discovered thereby." *Ceccolini*, 435 U.S. at 277. Applying this reasoning, we do not find merit in John's argument.

## B. *Brady* violation

■ ■ During cross-examination, D.S. stated that there was a civil suit filed against the primary school she attended because of John's alleged sexual misconduct while he was in the school's employ. John argues that the trial court erred in failing to grant a mistrial because the People did not disclose the fact that families of the victims had filed a civil suit against the school. John contends that such information was favorable to his defense and, as such, the People were obligated to disclose this information in accordance with *Brady*, 373 U.S. at 83. To prevail on a claim of a *Brady* violation "the defendant must show that the evidence was (1) suppressed [i.e. the people failed to disclose it], (2) favorable, and (3) material to the defense." *Williams v. People*, 59 V.I. 1024, 1039 (V.I. 2013).

> A defendant's due process right to a fair trial is violated under *Brady* when the prosecution fails to disclose evidence favorable to a criminal defendant where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Evidence is material if there is a reasonable probability that the outcome would have been different had the evidence been disclosed to the defense . . . . Impeachment evidence falls within *Brady* when the reliability of a witness may be determinative of a criminal defendant's guilt or innocence. The purpose of *Brady* is not to require the prosecution to disclose all possibly favorable evidence to the defense but to make certain that the defendant will not be denied access to evidence which would ensure him a fair trial.

*George v. People*, 59 V.I. 368, 377-78 (V.I. 2013) (internal citations and quotation marks omitted). We reject John's contention that the trial court

abused its discretion in denying the motion for a mistrial for failing to disclose knowledge of the civil suit to the defense.

 *Brady* obligates the prosecution to disclose evidence known by those acting on the government's behalf. *Strickler v. Greene*, 527 U.S. 263, 275, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). The prosecution's duty to disclose under *Brady* is not limited only to evidence within the prosecution's actual knowledge or possession. *United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008). The prosecutor is also obligated to "learn of and disclose information known to the others acting on the government's behalf in the case." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (internal quotation marks omitted)). The prosecutor is presumed to have knowledge of all relevant and material information within the actual knowledge and possession of other agencies outside of the prosecutor's office where these agencies have collaborated with the prosecution as a part of the investigative team, such as the police department or forensic lab. *See In re Brown*, 17 Cal. 4th 873, 72 Cal. Rptr. 2d 698, 952 P.2d 715, 719 (1998) (quoting *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir.1995) ("The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.")); *State v. James*, 292 Ga. 440, 738 S.E.2d 601, 604 n.4 (2013) ("A prosecutor is presumed to have knowledge of all information gathered in connection with his or her office's investigation of the case and has a duty to learn of favorable evidence known to others acting on the government's behalf in the case. This includes employees of state crime labs and state departments of family and children's services."); *Reyeros*, 537 F.3d at 281 ("prosecutor is charged with knowledge of information possessed by other agents of the . . . government when those agents are a part of a 'prosecution team,' which includes . . . personnel involved in the investigation as well as the prosecution of a case").

However, a prosecutor is not presumed to have the imputed knowledge of every part of the government or every agency of the government simply because the prosecutor's office is also part of the government. *See State v. Williams*, 392 Md. 194, 896 A.2d 973, 988 (2006) (quoting *United States v. Avellino*, 136 F.3d 249, 255-56 (2d Cir. 1998) (rejecting the proposition that "knowledge of any part of the government is equivalent to knowledge on the part of [a] prosecutor")); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (no *Brady* violation where allegedly

exculpatory information was in the possession of other government agencies that were not a part of the investigation team and that did not participate in prosecution, where prosecution was unaware of existence of the information).

 ██ Here, the prosecution stated that it did not have any prior knowledge of the civil suit against the school. (J.A. at 682.) Further, it appears that the People were not involved in the civil case, nor did the government rely on any information from or concerning the civil trial in order to prosecute this case. The existence of a civil case is information that would have been publicly available to the defense in the same manner as it would be available to the prosecution. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). Indeed, there is a constitutional right of access to basic court filings. *See Delaware Coalition for Open Gov't, Inc. v. Strine*, 733 F.3d 510, 513-15 (3d Cir. 2013); *see also IDT Corp v. eBay*, 709 F.3d 1220, 1223-24 (8th Cir. 2013) (discussing the presumption of access to documents like civil complaints filed in court). A number of courts have held that information pertaining to a civil trial falls outside the scope of the prosecution's *Brady* obligation. *State v. Mullen*, 171 Wn.2d 881, 259 P.3d 158, 167 (2011) (en banc) (failure of prosecution to disclose deposition notes from a separate civil case did not violate *Brady* where the defense could have discovered information for itself with the exercise of due diligence); *People v. Garrett*, 23 N.Y.3d 878, 994 N.Y.S.2d 22, 18 N.E.3d 722, 728-33 (2014) (the prosecution had no obligation under *Brady* to investigate whether the witness had any pending civil cases against him). Accordingly, the prosecution would have no obligation under *Brady* to disclose information of the civil case against the school that the victims attended, since information concerning this case was equally available to both the People and the defense. The People did not participate in the civil case, nor were they a party to the civil case so knowledge of the civil case cannot be imputed to the People.

### C. Sufficiency of the Evidence

John argues that the evidence presented at trial was insufficient to sustain convictions on counts one, two, seven, nine, ten, twelve, and fourteen.

### i. Count One — Unlawful Sexual Contact of K.W.

Count one of the third superseding information charged John with unlawful sexual contact against K.W., "who was under thirteen years of age, who is not his spouse, to arouse or gratify his sexual desires, by touching her intimate body parts, to wit her vagina" in violation of 14 V.I.C. § 1708(a)(2). (J.A. at 207.)

██ John directs our attention to certain discrepancies in K.W.'s testimony which he asserts is contradictory and raises questions about her credibility. For instance, John notes the discrepancies in K.W.'s testimony concerning the seating arrangements of the desk and the testimony of J.J., a non-victim witness. K.W. testified that the desks were situated in groups of four and that John purposefully arranged the seats so that he sat next to her. (J.A. at 299.) J.J. testified that John was not sitting next to them, but rather on the opposite side of the classroom from the clusters of desks. John asserts that because these and other statements are contradictory, K.W.'s statements are not credible and are not sufficient to sustain his conviction for count one. However, it is well-established that the assessment of the credibility of witnesses is entirely within the province of the jury, and the jury's credibility determination is not to be disturbed unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the evidence presented at trial. *Alexander v. People*, 60 V.I. 486, 509-10 (V.I. 2014).

██ Reviewing the record as a whole, the evidence presented at trial established the essential elements of the crime. K.W. testified that John touched her vagina while she was in the fourth grade. (J.A. at 299-300.)[3] She also testified as to her date of birth establishing that she was under 13

---

[3] John also argues that in light of *Govt. of the V.I. v. Davis*, 561 F.3d 159, 51 V.I. 1179 (3d Cir. 2009) these inconsistencies substantially diminish the credible character of the testimony. In *Percival*, this Court explicitly explained how *Davis* has no persuasive value to this Court and its reasoning does not support the type of sufficiency challenge John asserts. *Percival v. People*, 62 V.I. 477, 484 (V.I. 2015). As we explained in *Percival*, "*Davis* has no persuasive value here at all, since reviewing the record to determine whether the evidence of guilt was so overwhelming that an error did not affect the verdict — as in *Davis* — and reviewing the record to determine whether the People introduced the minimum amount of evidence constitutionally required to obtain a conviction — as Percival asks us to do in this case — are completely different inquiries." *Id.*; *see also Simmonds v. People*, 53 V.I. 549, 561 n.7 (V.I. 2010). Since John makes the same argument as Percival did — questioning whether the People introduced the minimum amount of evidence constitutionally required to obtain a conviction — we find that John's argument is meritless.

years of age at the time of the incident. (*Id.* at 298.) This testimony satisfies the elements of 14 V.I.C. § 1708(a)(2).

### ii. Counts Two and Seven — Unlawful Sexual Contact of L.C. and A.D.

Count two of the amended third superseding information charged that John committed an "act of unlawful sexual contact upon the person of L.C., who was under thirteen years of age, who is not his spouse, to arouse or gratify his sexual desires, by touching her intimate body parts, to wit, by touching her vagina" in violation of 14 V.I.C. § 1708(a)(2). Count seven charges John with committing "acts of unlawful sexual contact, upon the person of A.D., who was under thirteen years of age, who is not his spouse, to arouse or gratify his sexual desires, to wit, by touching her upper inner thigh" in violation of 14 V.I.C. § 1708(a)(2).

At trial, L.C. testified as to her date of birth and that she was in the fourth grade, thus under the age of 13, at the time of the sexual contact with John. (J.A. at 599-600.) She further testified that one day after school while waiting for her mother, she and John were alone in a classroom stacking books. According to the testimony, John "scoot[ed] closer" to her and put his hands into her underwear and began to touch her vagina. (*Id.* at 605-66.)

John asserts that the sufficiency of this testimony is questionable because he testified at trial, in direct contradiction to L.C.'s testimony, that he never took children to his classroom alone, as this was in direct violation of school policy, and he always obeyed school policy. (*Id.* at 1954.) John further testified that he was never alone with L.S. in the classroom at any time to stack books, and that he never touched her inappropriately. (*Id.*)[4]

Similarly, A.D. testified as to her date of birth and that she was in the fourth grade at the time of her sexual contact with John. (J.A. at 385-86.) Her birth certificate was also admitted into evidence. (*Id.*) A.D. testified that she was one of John's favorite students and that she was treated

---

[4] John also claimed that at the time of the alleged touching, L.C. was in the care of an afterschool program that was independent from the school, and that it was not possible for a student enrolled in this program to absent herself and be in the presence of a regular classroom teacher. (Appellant's Br. at 18.) However, there is no testimony from L.C. or any other witness on the record before us that substantiates this claim.

differently and often called upon by John to tutor other students. A.D. testified that at an after school program called the "Dominoes club," where she and other students played Dominoes and other games, John would often attend and endeavor to sit adjacent to her despite her attempts to avoid sitting next to him. (J.A. at 404-05.) A.D. testified that at numerous times John would rub her upper inner thigh during the Dominoes club's activities. (J.A. at 391.)

John argues that "mirrors of doubt" surround A.D.'s testimony because it was revealed on cross-examination that the People instructed A.D. to specifically disclose the area where she was touched as her "upper inner thigh." John also notes other discrepancies in A.D.'s testimony, in which she stated that the touchings occurred all year round, although the Dominoes club only existed for one semester. (Appellant's Br. at 21.)

John asserts that the contradictions in A.D.'s and L.C.'s testimonies render the evidence insufficient. However, John is reminded that "we do not serve as usurpers of the role of the jury by engaging in second-guessing the evidence presented at trial, nor do we re-weigh the credibility of witnesses." *Morton v. People*, 59 V.I. 660, 671 (V.I. 2013). The jury heard testimony from L.C. and A.D. of how John engaged in unlawful sexual contact with them, as well as his testimony to the contrary. "[T]he jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." *Alexander*, 60 V.I. at 510.

Both the testimony of L.C. and A.D. established the essential elements of the crime — that John engaged in unlawful sexual contact with them when they were under thirteen years old. We note that while a jury's credibility determinations "are given great deference, they are not conclusive, and an appellate court may disregard the jury's reliance on a witness's testimony when that testimony is 'inherently incredible or improbable.' " *Ostalaza v. People*, 58 V.I. 531, 544-45 (V.I. 2013) (citations and internal quotation marks omitted).

However, John has not presented us with anything substantial to warrant our intruding into the province of the jury and substituting our own credibility determination for theirs. We do not find the discrepancies he alleged to have rendered the testimony of the victims to be "so manifestly false that reasonable men ought not to believe it," or that it has been "shown to be false by objects or things as to the existence and meaning of which reasonable people should not differ." *Id.* at 546.

Therefore, the evidence on these charges was sufficient, and we affirm the convictions for counts 2 and 7.

### iii. Counts 9 and 10 — Aggravated Rape and Unlawful Sexual Contact of J.R.

■ Counts 9 and 10 charged John with aggravated rape in the first degree and unlawful sexual contact with J.R. Count 9 charged that John did "perpetrate an act of sexual intercourse upon the person of J.R., a minor female, not his spouse, who was under thirteen years of age, by inserting his finger in her vagina" in violation of 14 V.I.C. § 1700(a)(1). In addition to testimony concerning her age at the time of the incident, J.R.'s testimony revealed that while she was a fourth grade student of John's, she forgot her money in the classroom during lunchtime. When she returned to collect her money, J.R. stated that John beckoned her forward, put his hand down her dress, touched her vagina, and inserted his finger into her vagina. (J.A. 1270-71.) This testimony established the elements of aggravated rape in the first degree, as well as unlawful sexual contact.

■ ■ John argues that the testimony of J.R. was not sufficiently corroborated because of the lack of medical evidence of whether J.R.'s hymen is still intact. (Appellant's Br. at 22.) The sole uncorroborated testimony of a rape victim may serve as the basis for a conviction even in the absence of medical or scientific evidence. *Brathwaite v. People*, 60 V.I. 419, 432 (V.I. 2014) (collecting cases); *see also Estick v. People*, 62 V.I. 604, 612 n.2 (V.I. 2015) (". . . [T]his Court has consistently held that the testimony of a single witness is sufficient to support a conviction, even if uncorroborated and contradicted by other testimony." *Percival v. People*, 62 V.I. 477, 487 (V.I. 2015) (quoting *Connor v. People*, 59 V.I. 286, 291 (V.I. 2013)). Further, it is not necessary for the hymen to be ruptured to prove the penetration element of rape. *See Poole v. State*, 46 So. 3d 290, 295 (Miss. 2010) (reviewing case law from several jurisdictions and holding that "evidence of an intact hymen is not conclusive proof that there was no penetration"); *Summerour v. State*, 242 Ga. App. 599, 530 S.E.2d 494, 498 (2000) (the penetration element of rape "need be only slight and may be proved by indirect or circumstantial evidence; it is not necessary that the vagina is entered or the hymen is ruptured, but an entering of the anterior of the organ is sufficient"); *Green v. State*, 243 Md. 75, 220 A.2d 131, 134 (1966) ("[I]t has never

been necessary that the victim's hymen be ruptured in order that the element of penetration be proven"). This argument is therefore spurious.

John further directs us to contradictory testimony presented by the defense that he contends severely diminishes the credibility of J.R. The defense's witness, Violet Woodley, who was a teacher in the classroom contiguous to John's classroom at the time J.R. was a student, testified that the connecting door between Woodley's class and John's class was always left open during lunch. Woodley, John, and John's wife also testified that John always went home for lunch.

Again, John is asking this Court to re-weigh the evidence and substitute our own credibility determinations in place of the jury's. Where there are conflicts in the testimony presented at trial, such conflicts present credibility issues for the jury to resolve, and this Court is not at liberty to substitute its credibility determinations for that of the jury. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). When viewing the record in the light most favorable to the People, it is clear that the People presented substantial evidence that outlined the essential elements of the crimes charged in counts 9 and 10. We further conclude that the jury had a substantial opportunity to hear and consider the contradictions in the testimony and that there is no valid grounds to disturb the credibility determinations of the jury.

### iv. Count 12 — Unlawful Sexual Contact of T.O.

John is charged with unlawful sexual contact in the first degree in count 12 for touching victim T.O.'s vagina. T.O. testified that when John was her primary school teacher, he accosted her while she was alone in his classroom, locked the door, and caressed her thigh and vagina. (J.A. at 1016-17.) John's inappropriate conduct with T.O. was first revealed during the "good touch/bad touch" presentation by the outreach program specialists from the St. Croix Women's Coalition. During trial, the defense presented expert testimony that the presentation was not conducted in accordance with the protocols and procedures recommended by the National Institute of Child Health and Human Development. John implies that this testimony, as well as the People's failure to have the child medically examined, creates a level of doubt that requires this conviction to be overturned. However, as we previously discussed, medical testimony evidencing hymen rupture is not required for a rape conviction. Additionally, a jury is not required to accept expert testimony as

conclusive, or to accord more weight to expert witnesses than it would any other witness. *Malloy v. Reyes*, 61 V.I. 163, 184 (V.I. 2014) (citing *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (an expert witness is subject to the same credibility evaluations as any lay witness)); *Lewis v. State*, 295 Ark. 499, 749 S.W.2d 672, 674 (1988); *Durousseau v. State*, 55 So. 3d 543, 562 (Fla. 2010) ("Where expert testimony is admitted, it is still the sole province of the jury or court as trier of facts to accept or reject such testimony, even if it is uncontroverted."); *State v. Earley*, 118 R.I. 205, 373 A.2d 162, 165 (1977) (the jury "is free to reject, accept, or attach any amount of weight it desires to the expert's testimony"); *People v. Cundiff*, 322 Ill. App. 3d 426, 749 N.E.2d 1090, 1097 (2001) ("The trier of fact is free to accept one expert's testimony over another's, and the jury decides what weight to accord the experts' respective testimony."); *Alexander v. United States*, 271 F.2d 140, 146 (8th Cir. 1959) ("It is for the jury to determine the weight of all testimony including expert testimony . . . [and] they are not bound to accept the opinions expressed by the expert witnesses."). Accordingly, the jury was free to accord credibility to the victim's testimony, the evidence was therefore sufficient, and we affirm this conviction.

### v. Count 14 — Unlawful Sexual Contact of M.D.

██ Count fourteen charged John with committing "an act of unlawful sexual contact upon the person of M.D., another victim who was under thirteen years of age, who is not his spouse, to arouse or gratify his sexual desires, by touching her intimate body parts, to wit, her buttocks and her breast" in violation of 14 V.I.C. § 1708(a)(2). M.D. testified that while she was a 12 year old student in John's sixth grade class (J.A. at 957), she and a friend returned with John to his empty classroom so that M.D. could collect some lunch money that she had forgotten. (*Id.* at 946-47.) M.D. stated that while exiting the classroom, John caressed her on the buttocks. *Id.* In addition, M.D. testified that on another occasion, John tickled her and caressed her breasts.

██ John argues that doubt about the veracity of M.D.'s testimony was raised when the People presented evidence that it was unlikely for the opportunity for the alleged acts to have occurred due to the school's policies and scheduling constraints. However, as we stated earlier, issues of credibility are within the dominion of the jury. The jury is tasked with evaluating the conflicts in testimony, determining credibility, and drawing

factual inferences from the testimony presented. *Alexander*, 60 V.I. at 498. On the record, the testimony of M.D. established the elements of the crime charged — that John engaged in unlawful sexual contact with her while she was under thirteen years old — and that evidence was sufficient to support this conviction beyond a reasonable doubt.

## V. CONCLUSION

A review of the entire record in this appeal confirms that the People established by a preponderance of the evidence, that none of the identities of the victims came from the suppressed notebooks. Even if they had, the testimony of the witnesses were sufficiently attenuated from the illegal search to avoid application of the exclusionary rule to bar reliance on their testimony. Because the record does not support the claim that the People possessed actual or presumed knowledge of a civil suit against the school that the victims attended, there is no basis to conclude that the People were under any obligation to disclose such information to the defense. Finally, the evidence was sufficient to support a finding by the jury beyond a reasonable doubt that John was guilty of the crimes charged in counts one, two, seven, nine, ten, twelve, and fourteen.

For the reasons elucidated above, the June 20, 2014 judgment and commitment of the Superior Court is AFFIRMED.